IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SERVICE TEAM OF PROFESSIONALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 18-0048-CV-W-BP |
| ) | |
| WILLIAM C. FOLKS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER AND OPINION (1) CONCLUDING THAT THE COURT LACKS PERSONAL JURIDICTION OVER DEFENDANTS AND (2) DIRECTING PLAINTIFF TO INDICATE WHETHER IT DESIRES FOR THE CASE TO BE TRANSFERRED**

Plaintiff filed this suit, alleging Defendants breached a contract. Defendants have filed a Motion to Dismiss, contending that they are not subject to personal jurisdiction in Missouri. Alternatively, Defendants ask that the case be transferred to the Middle District of Louisiana for the convenience of the parties pursuant to 28 U.S.C. § 1404(a). The Court concludes that it does not have personal jurisdiction over Defendants, so the Court cannot consider transferring the case based on § 1404(a). The Court will defer taking any further action, however, to allow Plaintiff an opportunity to indicate whether it would like the case transferred to the Middle District of Louisiana pursuant to 28 U.S.C. § 1406(a).

**I. BACKGROUND**

Plaintiff is in the business of granting franchises to businesses engaged in providing cleaning and restoration services. (Doc. 1, ¶ 7.) Defendants entered into a Franchise Agreement with Plaintiff for the operation of a franchise in Baton Rouge, Louisiana. (Doc. 1, ¶¶ 10-11.) Section 26 of the Franchise Agreement contained a forum selection clause stating that "[p]roper

venue for any action shall be in Kansas City, Missouri." (Doc. 1, ¶ 6; Doc. 8, p. 2.)[1] The Franchise Agreement was due to expire on July 31, 2016. (Doc. 8-1, p. 2.)[2]

A dispute arose between the parties, and in April 2016 they entered into a Mutual Settlement and General Release Agreement, ("the Settlement Agreement"). (Doc. 1, ¶ 14; Doc. 1-1; Doc. 14-4, pp. 39-43.) The Settlement Agreement provides that the Franchise Agreement was deemed to have been terminated as of January 1, 2016, and that "none of the Settling Parties shall have any remaining obligations or rights thereunder, *except* for those post termination obligations and rights described within Section 13a through Section 13d and Section 13f through Section 13h of the Franchise Agreement." (Doc. 1-1, p. 1 (emphasis supplied).) Generally, these specified sections (hereafter "Section 13") describe the franchisee's obligation to stop using Plaintiff's service marks, refrain from divulging trade secrets, return certain materials to Plaintiff, and cancel or abandon all fictitious names, service marks, advertising, and business listings incorporating or related to Plaintiff's name or mark. (Doc. 1, ¶ 16.) However, with the exception of Section 13, the Settlement Agreement specifies that "the Settling Parties are relieved from all of the terms and conditions" of the Franchise Agreement. (Doc. 1-1, p. 1.)

Another dispute arose between the parties, this time over whether Defendant had breached the Settlement Agreement. Plaintiff filed suit in the District of Nevada, contending that Defendants had breached the Settlement Agreement by continuing to use Plaintiff's promotional videos, service marks, and other materials. (Doc. 8-4, ¶¶ 17-19, 23.) Defendants moved to dismiss the suit, arguing that they were not subject to personal jurisdiction in Nevada. (Doc. 14-4.) The District of Nevada agreed that Defendants lacked minimum contacts with that state, and

---

[1] All page numbers are those generated by the Court's CM/ECF system.

[2] The Record does not include the Franchise Agreement that was actually executed by the parties. However, the parties agree with this description of the Franchise Agreement. Plaintiff has provided a blank or form agreement, (Doc. 14-1; Doc. 14-4, pp. 18-37), which is consistent with the description agreed to by the parties.

2

granted Defendants' Motion to Dismiss in January 2018. (Doc. 8-5.) Plaintiff then filed this suit, which is essentially the same as the one it filed in Nevada.

Defendants contend that the case must be dismissed because (1) the forum selection clause did not survive the Franchise Agreement's termination, and (2) they do not have the minimum contacts with Missouri necessary to satisfy the Due Process Clause. Alternatively, they ask that the case be transferred to the Middle District of Louisiana for the convenience of the parties pursuant to 28 U.S.C. § 1404(a). Plaintiff opposes Defendants' Motion. As discussed more fully below, the Court concludes that Defendants are not subject to personal jurisdiction in this forum, but the Court defers further action so that Plaintiff can indicate whether it wants the case transferred to a proper forum.

## II. DISCUSSION

### A. The Forum Selection Clause

"Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Dominium Austin Partners, LLC v. Emerson,* 248 F.3d 720, 726 (8th Cir. 2001) (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 472 n.14 (1985) and *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972)); *see also St. Paul Fire & Marine Ins. Co. v. Courtney Enterprises, Inc.,* 270 F.3d 621, 624 (8th Cir. 2001). Plaintiff contends that the Franchise Agreement's forum selection clause was valid and that it survived the Franchise Agreement's termination. Defendants do not dispute that the forum selection clause was valid; they only contend that it is no longer in effect because in the Settlement Agreement the parties agreed to no longer be bound by that provision. The Court agrees with Defendants.

3

Normally, the parties' obligations expire when a contract terminates, but provisions related to the manner in which disputes are resolved generally survive the contract's termination. Such provisions govern disputes that (1) accrued before the agreement's termination or (2) relate to post-termination obligations specified in the contract. *E.g, Silverpop Sys., Inc. v. Leading Market Tech., Inc.,* 641 Fed. App'x 849, 857 (11th Cir. 2016); 13 Corbin on Contracts § 67.2 (2003). Courts have applied this general principle to forum selection clauses and concluded that such clauses generally survive the termination of the agreement and apply to pre-termination disputes and to post-termination obligations specified in the agreement. *E.g., United States Smoke & Fire Curtain, LLC v. Bradley Lomas Electrolok, Ltd.,* 612 Fed. App'x 671, 672-73 (4th Cir. 2015); *Tristate HVAC Equipment, LLP v. Big Belly Solar, Inc.,* 752 F. Supp. 2d 517, 534-35 (E.D. Pa. 2010); *AGR Fin., LLC v. Ready Staffing, Inc.,* 99 F. Supp. 2d 399, 401 (S.D.N.Y. 2000); *Allied Sound, Inc. v. Dukane Corp.,* 934 F. Supp. 272, 275 (M.D. Tenn. 1996); *Baker v. Economic Research Servs., Inc.,* 2018 WL 1415501, *2 (Fla. Dist. Ct. App. 2018). However, the common law rule assumes that the contract containing the contract has expired by its terms or that the parties have merely agreed to terminate the contract. The parties are free to negotiate a different outcome.

The question before the Court is whether the Settlement Agreement terminated the parties' agreement to litigate disputes in Kansas City, Missouri. When interpreting the Settlement Agreement, the Court's objective is to ascertain and give effect to the parties' intent. *E.g., Armbruster v. Mercy Med. Grp.,* 465 S.W.3d 67, 71 (Mo. Ct. App. 2015).[3] The parties' intent is to be gleaned solely from the contract if the contract's terms are unambiguous, *e.g,. id.,*

---

[3] The parties do not clearly suggest which law governs the Settlement Agreement, particularly if Section 26 of the Franchise Agreement (which also included a choice of law provision) is no longer applicable after the Settlement Agreement. However, the contractual principles discussed in this paragraph are of such a general nature that they are undoubtedly the same in all other jurisdictions.

4

and in conducting this inquiry "the terms of a contract should be read as a whole." *State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 858 (Mo. 2006) (en banc).

The Settlement Agreement does not contain a forum selection clause or choice of law provision. The parties discussed the issue during negotiations but were unable to agree. (Doc. 8-2, ¶¶ 4-5.) However, they were able to agree that, with the exception of certain obligations in Section 13, "the Settling Parties are relieved from *all of the terms* and conditions" of the Franchise Agreement. (Doc. 1-1, p. 1 (emphasis supplied).) This language is unambiguous, and the only possible interpretation is that the parties agreed that all of the Franchise Agreement's provisions ended effective January 1, 2016, except for the specified provisions in Section 13. This means that the parties were relieved of obligations contained in Section 26, including the obligation to resolve disputes in Kansas City, Missouri.

Plaintiff opposes this conclusion by relying on the common law principles referenced earlier. It suggests that the common law principles apply and a forum selection clause remains applicable whenever and regardless of how a contract ends. However, there can be no doubt that the parties retain the ability to agree to terminate a forum selection clause; the question in a given case is whether they did so. For the reasons set forth in the preceding paragraph the Court concludes that the parties in this case agreed to terminate the forum selection clause.

Moreover, the case upon which Plaintiff principally relies is distinguishable. Plaintiff cites the Eastern District of Pennsylvania's decision in *Tristate HVAC Equip., LLP v. Big Belly Solar, Inc.* for the proposition that a forum selection clause survives even if a terminated agreement does not specifically state that the forum selection clause survives the contract's termination. (Doc. 14, pp. 12-13.) In *Tristate HVAC*, one party terminated a contract for cause pursuant to the agreement's provisions, and the contract specified that certain provisions

5

survived after termination. Although the forum selection clause was not specified as a surviving provision, the court nonetheless ruled that the forum selection clause survived. However, *Tristate HVAC* is distinguishable in two important respects. First, the agreement's provisions caused the agreement to terminate, and when that happens the common law presumes that the choice of law provision remains applicable. In contrast, in the present case the parties executed a separate agreement to terminate the Franchise Agreement. Second, and perhaps more importantly, the events giving rise to the claim in *Tristate HVAC* occurred before the contract was terminated, and the common law establishes that a forum selection clause applies to disputes that arise before the contract is terminated. In contrast, Plaintiff's claim is that Defendants breached the Settlement Agreement *after* the Franchise Agreement was terminated. For these reasons, *Tristate HVAC* does not support Plaintiff's argument.

Finally, Plaintiff contends that Defendants conceded that the Franchise Agreement's forum selection clause applies when they argued that the District of Nevada lacked jurisdiction in Plaintiff's initial lawsuit. The Court disagrees with this interpretation of Defendants' argument to the District of Nevada. The issue addressed there was whether Defendants were subject to personal jurisdiction in Nevada. In the course of that discussion Defendants contended that the parties' prior business relationship had no connection to that state, and they identified all of the places relevant to that relationship – including where the Franchise Agreement was executed, negotiated, and performed. At the conclusion of this discussion, Defendants observed that "[f]urther, the Franchise Agreement [has] a choice of law clause and forum selection clause, which designates Missouri, which is further evidence that Defendants have not purposely availed themselves to the benefits of the subject forum." (Doc. 14-4, p. 11.) Defendants were not contending that they were subject to personal jurisdiction in Missouri; they were explaining why

6

the Franchise Agreement provided no connection to Nevada.  Later, Defendants observed that "[t]he Franchise Agreement and Settlement Agreement, which govern the operation of the franchise in Louisiana and the agreement between the parties, were not executed in Nevada." (Doc. 14-4, p. 12.)  Plaintiff interprets this sentence as a concession that the Franchise Agreement governs the parties' settlement, but the Court disagrees.  The sentence is describing two agreements between the parties: the Franchise Agreement, which governed the franchise's operation, and the Settlement Agreement, which governed the parties' agreement to terminate the Franchise Agreement.  Defendants' sole point was that neither agreement was executed in Nevada, and Defendants were not arguing or conceding that the Franchise Agreement's forum selection clause applies to disputes under the Settlement Agreement.

By executing the Settlement Agreement, the parties agreed that only Section 13 of the Franchise Agreement would continue past January 1, 2016, and that the parties were relieved from all other from all of the other provisions of the Franchise Agreement.  Therefore, Plaintiff cannot rely on the forum selection clause in Section 26 of the Franchise Agreement as a basis for asserting personal jurisdiction over Defendants.

### B.  Minimum Contacts

Plaintiff alternatively argues that even if the forum selection is no longer in effect, the Defendants have sufficient minimum contacts with Missouri to support personal jurisdiction. The Court disagrees.

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists" and must "make a prima facie showing of personal jurisdiction over the challenging defendant."  *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).  "While the plaintiffs bear the ultimate burden of proof, jurisdiction need not be

7

proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir. 2003). "When assessing whether personal jurisdiction exists over a nonresident defendant, jurisdiction must be authorized by Missouri's long arm statute and the defendant must have sufficient minimum contacts with the forum state to satisfy due process." *Downing v. Goldman Phipps, PLLC,* 764 F.3d 906, 911 (8th Cir. 2014). These are separate inquiries under the Missouri long arm statute. *See Myers v. Casino Queen*, 689 F.3d 904, 909-10 (8th Cir. 2012). Here, the Court is not persuaded that either the long arm statute or the Due Process Clause has been satisfied.

### *1. The Long Arm Statute*

Under the long arm statute, a party submits itself to jurisdiction in Missouri if it, among other things, transacts business in the state or makes a contract in the state. Mo. Rev. Stat. § 506.500.1(1)-(2). Plaintiff primarily relies upon the Franchise Agreement to contend that Defendants transacted business in Missouri, (Doc. 14, pp. 14-15), but as noted earlier Plaintiff's claims arise from Defendants' conduct *after* the Franchise Agreement was terminated. Assuming that Defendants' negotiation, execution, and contractual obligations related to the Franchise Agreement satisfied the long arm statute, that transaction of business ended when the Franchise Agreement ended.

Plaintiff alternatively relies on the Settlement Agreement, contending that it was made in Missouri and so the long arm statute is satisfied. For support, it presents an Affidavit from Tina Farrell, who avers that she has personal knowledge of the fact that Plaintiff's attorney "conducted settlement negotiations and communicated acceptance of the settlement agreement

terms from his Missouri office." (Doc. 14-2, ¶ 13.)[4]  However, "[f]or purposes of the long-arm statute, a contract is made where acceptance occurs," *Strobehn v. Mason,* 397 S.W.3d 487, 498 (Mo. Ct. App. 2013), and Farrell's Affidavit does not represent that the Settlement Agreement was executed in Missouri.  Plaintiff does not indicate where acceptance occurred.  However, the District of Nevada found that Defendants signed the Settlement Agreement in Louisiana and Plaintiff executed it in California.  (Doc. 8-5, p. 3.)  It is not clear which of those two states constitutes the state where acceptance occurred, but Missouri is not a possibility.  Therefore, the Court has no basis for concluding that the Settlement Agreement was made in Missouri.[5]

Plaintiff claims that Defendants breached the Settlement Agreement executed in April 2016.  However, Plaintiff has not provided any reason to believe that Defendants conducted business in Missouri after that date, nor has Plaintiff demonstrated that the Settlement Agreement was made in Missouri.  Therefore, Plaintiff has not satisfied its obligation to present a prima facie case establishing that Defendants are subject to Missouri's long arm statute.

## *2.  The Due Process Clause*

Even if the long arm statute is satisfied, Plaintiff must present a prima facie case establishing that the requirements of the Due Process Clause have been satisfied.  Plaintiff contends that Defendants are subject to specific jurisdiction, *see Epps,* 327 F.3d at 648 (describing the difference between general and specific jurisdiction).  There is "a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state to exercise specific jurisdiction over defendants.  The five factors are: 1) the nature and quality of

---

[4] The fact that Farrell is describing conversations involving other people does not mean that her description is not based on personal knowledge, as she represents at the beginning of her Affidavit.  The Court therefore denies Defendants' request, (Doc. 18, p. 7, n.7), to disregard the Affidavit because it is not based on personal knowledge.

[5] The Court notes that Plaintiff argued to the District of Nevada that the Settlement Agreement was executed in Nevada.  (Doc. 18-1, p. 7.)

9

contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties. We give significant weight to the first three factors." *Fastpath*, 760 F.3d at 821. The third factor analyzes the connection between the cause of action and the contacts, so "[t]he third factor distinguishes whether the jurisdiction is specific or general." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). The balance of these factors does not favor a finding of personal jurisdiction.

Many of the Court's observations related to the long arm statute are applicable to the Due Process analysis. Plaintiff's claim involves conduct that occurred after the Settlement Agreement was entered in April 2016, and after the Franchise Agreement was terminated in January 2016. Therefore, any activity Defendants conducted in Missouri in connection with the Franchise Agreement is irrelevant to the analysis. The conduct complained of occurred in Louisiana. The only relevant conduct occurring in Missouri, according to Farrell's Affidavit, are some discussions about the Settlement Agreement. However, Plaintiff represented to the District of Nevada that "many of the events related to the Settlement Agreement took place in Nevada, including the review, negotiation, and execution of the same" and that "[t]he Settlement Agreement was significantly prepared in Nevada, with numerous rounds of negotiations and drafting occurring in Nevada." (Doc. 18-1, pp. 7, 10.) These facts persuade the Court that to the extent negotiation of the Settlement Contract is relevant to the Due Process analysis, the negotiations were centered in Nevada and Defendants' the nature and quality of Defendants' few contacts with Missouri were too slight to support personal jurisdiction.

10

### C.  Dismissal or Transfer

A court has two options when personal jurisdiction is lacking.  One is to dismiss the case without prejudice.  The other is to transfer the case to a forum where personal jurisdiction exists. 28 U.S.C. § 1406(a); *see also Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH,* 495 F.3d 582, 588 (8th Cir. 2007) (§ 1406(a) permits transfer when personal jurisdiction is lacking); *Follette v. Wal-Mart Stores, Inc.,* 41 F.3d 1234, 1238 (8th Cir. 1994) (same).  However, the Court will transfer the case only if Plaintiff indicates that it wants the case transferred.  The Court will defer taking any action until Plaintiff expresses its views on the matter.

### III.  CONCLUSION

When the parties agreed to terminate their Franchise Agreement, they specified that – with one exception – none of the terms or conditions remained operative.  Therefore, the parties were no longer subject to the Franchise Agreement's forum selection clause.  Furthermore, Defendants are not subject to personal jurisdiction in Missouri because the requirements of Missouri's long arm statute and the Due Process Clause have not been satisfied.

The Court will defer taking any further action for fourteen days, so that Plaintiff can indicate whether it wants the case transferred to the Middle District of Louisiana.

**IT IS SO ORDERED**.

DATE: May 2, 2018

/s/ Beth Phillips  
BETH PHILLIPS, JUDGE  
UNITED STATES DISTRICT COURT